IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHESAPEAKE TRUST,

      Plaintiff,

v.

CHESAPEAKE BAY ENTERPRISES, INC.,

      Defendant.

_____

                               Civil Case No. 3:13CV344

CHESAPEAKE BAY ENTERPRISES, INC.,

      Third-Party Plaintiff,

v.

REGIONS BANK, N.A., *et al.*

      Third-Party Defendants.

### MEMORANDUM OPINION

     This matter comes before the Court on the defendant's Motion to Withdraw Reference of the adversary proceedings in the Bankruptcy Court. (Dk. No. 1.) The defendant, Chesapeake Bay Enterprises ("CBE") seeks to withdraw this Court's previous reference of the case to the Bankruptcy Court, and to have this Court dispose of state law claims that have arisen with respect to the bankruptcy.

     CBE argues that these adversarial proceedings fall outside of the Bankruptcy Court's statutory jurisdiction, depriving that Court of the authority to enter final judgment on dispositive issues. Ordinarily, a bankruptcy court can enter final judgments only in "core" proceedings—matters directly arising from bankruptcy law or from the bankruptcy case. In other matters, the

bankruptcy court only recommends a decision to the district court, which must make the final decision. This case is a "non-core" proceeding, so ordinarily, this Court would decide the matter.

A bankruptcy court, however, may have jurisdiction to make the final judgment in a non-core matter if the parties consent to the jurisdiction. Upon a finding that the movant consented – either implicitly or explicitly – to the bankruptcy court's jurisdiction, the bankruptcy court possesses the authority to enter dispositive orders, and no remand needs to occur. In this case, CBE's conduct shows its intent to subject itself to the jurisdiction of the Bankruptcy Court. It only sought removal after it grew unhappy with decisions by the Bankruptcy Court. Buyer's remorse does not absolve CBE of its initial decision to submit to the Bankruptcy Court's jurisdiction; that Court possesses the authority to enter dispositive rulings in the adversary proceedings at issue.

Another route exists to withdraw this case from the Bankruptcy Court. In its discretion, a district court may take back a case, or part of a case, from the bankruptcy court. Six factors govern the exercise of the district court's discretion. Those factors do not weigh in favor of the District Court's jurisdiction in the instant case, and do not provide grounds for a remand.

The Court therefore DENIES the defendant's motion.

## II. MATERIAL FACTS

Potomac Supply Corporation ("Potomac") defaulted on a loan owed to Regions Bank in 2010 and sought chapter 11 bankruptcy on January 20, 2012, with Pillsbury Shaw as counsel. Chesapeake Bay Enterprises ("CBE") was created shortly thereafter (in mid-February) for the purpose of acquiring Potomac's assets through the bankruptcy sale process. CBE's representatives began attending hearings before the Bankruptcy Court in March, eventually submitting a term sheet to Potomac in July. CBE entered into an Asset Purchase Agreement ("APA") with Potomac to purchase its assets for $20 million on September 21, 2012. Pursuant to

2

the APA, CBE transferred $500,000 to Potomac's bankruptcy counsel, Pillsbury Shaw, in mid-September, 2012.

The APA explicitly required the Bankruptcy Court's approval, and Potomac subsequently filed a motion in the Bankruptcy Court on September 26, 2012, requesting the Court approve CBE's proposed APA. Potomac's creditors objected to the sale, and, a week later, CBE notified the Bankruptcy Court that CBE could not obtain sufficient financing to complete the purchase.[1] Potomac then proposed a sale of its assets to American Industrial Products ("AIP") for $10 million. One week later, on November 13, 2012, the Bankruptcy Court approved the proposed sale. At the same time, the Court approved the transfer of Potomac's interest in the $500,000 deposit to Potomac's counsel, Pillsbury Shaw. CBE attended these hearings, but did not object to the proposed sale, instead only informing the Bankruptcy Court that it reserved the rights to its initial $500,000 deposit. On November 27, CBE filed a motion with the Bankruptcy Court, asking the Court to reconsider its order approving Potomac's sale to AIP. CBE later withdrew that motion.

In January 2013, upon Potomac's motion, the Bankruptcy Court converted Potomac's Chapter 11 bankruptcy to a Chapter 7 bankruptcy, and approved Potomac's and Regions Bank's proposal to create the "Chesapeake Trust," which assumed Potomac's legal interests as to the $500,000 deposit. CBE again did not object to the Court's order.

---

[1] After the first abortive attempt to buy the assets, CBE proffered several alternative sources of financing that would allow it to go through with the deal. These sources of capital proved, at best, unreliable, and, at worst, bogus. CBE eventually offered to purchase the assets for about half the price agreed to in the APA, but, given CBE's conduct and prospects of financing, the debtor wisely declined CBE's second offer.

CBE moved for leave to file an action in state court to recover its $500,000 deposit in February 2013.[2] On the date of the hearing on that motion, April 9, 2013, Chesapeake Trust filed a complaint in Bankruptcy Court against CBE for breach of the 2012 APA. The Bankruptcy Court, at the evidentiary hearing for CBE's motion, stated from the bench its belief that "this matter belongs in the federal court, in the Bankruptcy Court," and denied CBE's motion to file a state court action. (Dk. No. 23, Ex. 8.)[3]

CBE filed a Third Party Complaint in Bankruptcy Court on April 23, 2013, against Pillsbury, Potter, Hall, and Regions Bank, primarily seeking to recover the $500,000 deposit, but also seeking other relief under state law. CBE simultaneously filed the instant motion to withdraw reference.

## II. DISCUSSION

### A. Bankruptcy Court Jurisdiction

The Eastern District of Virginia automatically refers all "cases, and matters and proceedings" under the Bankruptcy Act, or arising under or related to Title 11, to the Bankruptcy Court. *See In the Matter of the Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D. Va. Aug. 15, 1984) (Order) ("Standing Order of Reference").

Upon referral to the bankruptcy court, "the manner in which a bankruptcy judge may act . . . . depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. ___, 131 S.Ct. 2594, 2603, 180 L.Ed.2d 475 (2011). "Congress has divided bankruptcy proceedings into three categories:" (1) those that arise under title 11, (2) those that arise in a title 11 case, and (3) those

---

[2] As part of that request, CBE served substantial discovery requests on Pillsbury Shaw, which subsequently provided CBE with 1,584 pages of documents.

[3] The court informed CBE's counsel that if counsel was concerned about potential jurisdictional issues, he was free to file a motion to withdraw reference.

4

that are related to a case under title 11. *Id.* Regarding the first two of these categories – so-called "core proceedings" – a bankruptcy judge "may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Id.* (quoting 28 U.S.C. § 157(b)(1)).

The third category of cases comprises matters that do *not* constitute "core proceedings," but remain otherwise related to a case under title 11. *Id.* In these "non-core" cases, the bankruptcy court may hear the matter, but its powers are typically confined to "only 'submit[ting] proposed findings of fact and conclusions of law to the District Court.'" *Id.* at 2604 (quoting § 157(c)(1)).

An exception to this stricture, however, permits the bankruptcy court to enter dispositive orders in non-core proceedings if the parties, in light of all the circumstances, have "impliedly consented to allowing the Bankruptcy Court to enter a dispositive order." *Canal Corp.v. Finnman (In re Johnson)*, 960 F.2d 396, 403 (4th Cir. 1992).

CBE contends that because this is a non-core bankruptcy matter in which the Bankruptcy Court may not render a final judgment, this Court should withdraw the matter from the Bankruptcy Court and try the case itself. Although CBE correctly states that the case is non-core, its motion ignores the fact that CBE has consented to the jurisdiction of the Bankruptcy Court.

### B. Non-Core Classification

Determining the proper classification of a proceeding – as core or non-core – requires the Court to identify the nature of the cause of action itself, and whether the action invokes a right under title 11 or that arose in a case under title 11. *Corliss Moore & Assoc., LLC v. Credit Control Servs., Inc.*, 497 B.R. 219, 224 (E.D. Va. 2013). In *Stern*, the Supreme Court held that the bankruptcy court lacked jurisdiction under Article III of the Constitution to decide a purely state law counterclaim of tortious interference with contract. *See Corliss*, at 227; *Stern* at 131 S. Ct. 2608. The *Stern* court deemed the state common law claim at issue "non-core," with the

bankruptcy court thus unable to render final judgment on the matter. *Stern*, at 2594. Here, CBE's claims do not invoke a right under title 11 or arise in a case under title 11. Like the claims in *Stern*, CBE's claims are purely state common law claims of tortious conduct. Thus, they are not core proceedings.

CBE's claims do fall within the third Stern category of bankruptcy cases: "non-core" proceedings that are otherwise "related to a case under title 11." *Id.*, at 2604 (quoting § 157(c)(1)). Courts have adopted an expansive definition of what constitutes a "related proceeding," and this Court has determined that a post-petition contract is clearly "related to" a case under title 11. *Corliss*, at 228. In *Corliss*, the post-petition contract involved collection of the debtor's receivables; in the instant case, the parties entered into a contract (the APA) to purchase the assets of the bankruptcy estate. The proceedings are "related to" the bankruptcy, and therefore are non-core.

Ordinarily, the non-core classification would mean that the Bankruptcy Court can only recommend a decision to this Court, which would make the dispositive decision. Unfortunately for CBE, however, consent plays into the picture in this case.

### C. CBE's Consent to Bankruptcy Jurisdiction

The Bankruptcy Court may constitutionally render final judgment in this case if the District Court finds that the parties consented to the Bankruptcy Court's jurisdiction. That consent may be implied by the parties' conduct. *Corliss*, at 228 (citing *Canal Corp.*, 960 F.2d at 402). *Corliss* inferred consent from a post-petition contract to collect the debtor's receivables; here, CBE entered a post-petition contract to purchase the assets of the bankrupt party. *Id.* "[T]he non-debtor contracting party is on notice of the Bankruptcy Court's intimate role in the contract and therefore implicitly consents to its jurisdiction." *In re Natl. Enter., Inc.*, 128 B.R. 956, 960 (E.D. Va. 1991).

Many courts consider such an action, standing alone, sufficient to establish the movant's consent to jurisdiction. See *Corliss*, at 228-29 (collecting cases). CBE's conduct exceeds this threshold. CBE was formed for the express purpose of purchasing Potomac's assets in the bankruptcy proceeding; it sought that Court's approval for the proposed asset sale; and it demanded (and received) extensive discovery under that Court's authority.[4] CBE's actions, taken in furtherance of CBE's founding purpose, indicate its willing consent to the Bankruptcy Court's jurisdiction. The plain language of the APA provides textual reinforcement for this common sense conclusion, expressly acknowledging CBE's consent to the Bankruptcy Court's "exclusive jurisdiction" over all disputes relating to the "interpretation and enforcement" of the APA. APA, § 11.24.

Thus, CBE has consented to the jurisdiction of the Bankruptcy Court, which accordingly now has the power to render a final decision on the matters sought to be withdrawn.

### C. Discretionary Withdrawal of Reference

Even when the bankruptcy court has jurisdiction, and even when the case involves a core proceeding, a district court may, in its discretion, withdraw reference on the motion of any party for cause shown under 28 U.S.C. § 157(d).[5] The movant, CBE, bears the burden of establishing cause to withdraw. *In re El-Atari*, 1:12-CV-01237, 2012 WL 6020110, at *2 (E.D. Va. Nov. 27, 2012). In determining whether "good cause" exists to withdraw the matter, the district court must consider six factors: (1) whether the proceeding is core or non-core; (2) uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) efficient use of debtors' and creditors' resources; (5) reduction of forum shopping; and (6)

---

[4] It also bears noting that CBE spent eleven months under the jurisdiction of the Bankruptcy Court. It only sought to escape after some unfavorable rulings on motions.

[5] CBE does not attempt to argue that withdrawal is mandatory under § 157(d), instead asserting that consideration of each of the six individual factors in the "good cause" analysis supports this Court's discretionary withdrawal of the matter. Memorandum in Support, at 14 (Dk. No. 14.).

preservation of the right to a jury trial. *Id.,* at \*1-2. The district court should exercise its discretionary power of withdrawal if it determines that, on balance, the factors indicate the interests of justice and judicial economy favor litigation in district court. *See In re QSM LLC,* 453 B.R. 807, 809-10 (E.D. Va. 2011); *In re El-Atari,* at \*2.

Here, CBE urges the Court in its discretion to withdraw the matter from the Bankruptcy Court. The Court elects not to do so. A brief review of the six discretionary factors demonstrates the wisdom of keeping this case in Bankruptcy Court.

### 1.   Core or Non-Core

The first factor involves consideration of whether the case is core or non-core. As noted above, the Court has deemed this litigation non-core. This classification, however, does not require a discretionary withdrawal. *See In re El-Atari,* at \*1; *In re QSM,* at 810 (no one factor dispositive). CBE's consent to the Bankruptcy Court's jurisdiction further lessens the impact a "non-core" designation might otherwise have on the proceedings.

### 2.   Uniform Administration of Bankruptcy Proceedings

It goes against this Court's general practice to remove from the Bankruptcy Court one of many matters related to a bankruptcy, and, even for non-core cases, the bankruptcy court need not lose jurisdiction immediately. *In re El-Atari,* at \*3 (Regardless of an issue's classification, because the Bankruptcy Court has "dealt with the related proceedings and is better suited to handle the issues presented due to experience and expertise, it would go against uniform administration" to remove one of many related matters pending in (or already resolved by) the Bankruptcy Court).

All the conduct complained of in CBE's third-party complaint occurred within the context of a proposed sale of a bankrupt corporation's assets, involves the alleged misconduct of the Bankruptcy Court-approved debtor's counsel, and necessarily attacks the propriety and accuracy

of the Bankruptcy Court's orders (e.g., its approval of the subsequent sale of Potomac's assets to a second, financed buyer after CBE's failure to obtain such backing).

Uniformity, therefore, weighs in favor of denying the motion to remand.

### 3.  Expediting Process/Promoting Judicial Economy

Judicial efficiency counsels against removal.  The Bankruptcy Court possesses both institutional expertise and factual familiarity: the parties' arguments, evidence, and discovery have been delivered or supervised at length there.

### 4.  Efficient Use of Parties' Resources

The Bankruptcy Court has already received briefing and heard arguments on the claims for which CBE seeks withdrawal; while the presiding judge's retirement will require another bankruptcy judge to assume the case, that Court will be better informed and equipped to address the matter.

### 5.  Reduce Forum Shopping

CBE filed this motion after its unsuccessful motion to move the issues to state court – as such, federal district court is the second forum to which CBE has attempted to flee from the Bankruptcy Court's jurisdiction.  CBE's motion constitutes blatant forum shopping.

### 6.  Preserve Right to Jury Trial

CBE, by virtue of the APA's express waiver of this right,[6] has given up its right to insist upon a jury trial.  CBE's reliance on this factor is further undermined by its admission that the

---

[6] The APA provides that CBE waives its right to a jury in any "action, proceeding, or counterclaim (whether based on contract, tort or otherwise) arising out of or relating to the actions of the parties hereto pursuant to this agreement or any other transaction document in the negotiation, administration, performance, or enforcement thereof." APA, § 11.25.

Bankruptcy Court could, in fact, conduct a jury trial upon the express consent of the parties[7] – but that CBE remains "unwilling to consent to a jury trial" in that Court.

## CONCLUSION

For the reasons set forth above, the Court DENIES the motion to withdraw reference.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: January 17, 2014
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[7] *See* 28 U.S.C. § 157(e).